UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**STEPHEN L. FARRAR**,

              Plaintiff,

v.

**COLETTE S. PETERS, director of O.D.O.C.; S. SHELTON, M.D., O.D.O.C. medical director, G. GULICK, M.D., SRCI; ROBERT WHITE, RN, SRCI; J. WILSON, Health Services, SRCI; B. WILSON, Health Services, SRCI; A. HUGHES, RN, SRCI; CAPTAIN BELLMAN, O.S.P.; OFFICER HUMPHREYS, O.S.P.**,

              Defendants.

Case No. 6:15-cv-01935-KI

OPINION AND ORDER
DISMISSING THIRD CLAIM

KING, Judge:

      Plaintiff, an inmate at the Oregon State Penitentiary, brings this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for partial summary judgment seeking dismissal of the only remaining claim (ECF No. 32).

Page 1 - OPINION AND ORDER DISMISSING THIRD CLAIM

## BACKGROUND

I previously dismissed plaintiff's first and second claims. Plaintiff's remaining claim alleges a violation of due process arising from a disciplinary sanction. In that claim, plaintiff alleges Captain Bellman and Officer Humphreys prohibited plaintiff from providing "exculpatory evidence" to prove his drug-free status, violating his due process rights. He also alleges the prison's policies do not accommodate medical issues that may arise during the drug test procedure, thereby violating his due process rights.

The Oregon Department of Corrections ("ODOC") prohibits the use of illegal drugs in its facilities. It uses the urinalysis testing procedures as set out in OAR 291-042 *et seq.* to monitor inmate compliance with its zero tolerance policy. Pursuant to those procedures, an inmate is required to produce a urine sample when ordered to do so. If an inmate is unable to comply with the order immediately, the inmate is permitted two hours to provide the sample, and is placed in a location where he can be observed. The inmate may be offered an eight-ounce container of water after the first half hour, and at 30-minute intervals thereafter up to a total of 24 ounces. OAR 291-042-0015.

Defendants randomly selected plaintiff to give a urine sample around 5:55 a.m. on January 19, 2014. This was not plaintiff's first time. He had given 23 urine samples before the incident date, and had tested positive six times.

Plaintiff told Officer Humphreys he needed to make a bowel movement because he had suffered with stomach flu symptoms all night. Officer Humphreys gave plaintiff permission to use the control floor restroom unsupervised. Plaintiff returned to the waiting room. Pl.'s Compl. ¶ 38; Humphrey's Decl. Attach. 1, at 7.

Page 2 - OPINION AND ORDER DISMISSING THIRD CLAIM

Officer Humphreys told plaintiff he would be permitted two cups of water; he then gave plaintiff a cup of water and left to process another prisoner's urinalysis. Plaintiff used the open restroom without asking and returned to the waiting room. Officer Humphreys gave plaintiff another cup of water to drink in the waiting room. Plaintiff helped himself to a half cup of water from the water fountain without asking. Officer Humphreys put plaintiff in Disciplinary Segregation ("DSU") for rule violations.[1]

Plaintiff asked to give a urine sample during his intake process at DSU. The officer told plaintiff that because he was being written up for contraband I,[2] plaintiff would not be given the opportunity to give a urine sample. After a hearing, an officer found plaintiff guilty of the contraband I charge and he was ordered to spend 38 days in DSU, 10 days loss of privileges, and loss of visiting privileges for 2,555 days. He was also placed on level one restrictive privileges for 10 to 12 months and lost his job in the dining room.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

---

[1] Officer Humphrey's misconduct report, and the disciplinary hearings officer's findings, represented that plaintiff helped himself to additional water first and then used the restroom without permission. Although plaintiff insists upon the relevance of the order of events, in the end he concedes he helped himself to water without permission and used the restroom without permission.

[2] "An inmate commits Contraband I if he/she: . . . (D) Fails to provide, refuses to submit, or submits an unacceptable urine sample for testing[.]" OAR 291-105-0015(d).

through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Defendants move for partial summary judgment to dismiss plaintiff's third claim, arguing failure to state a claim or, alternatively, that plaintiff received all the process he was due.

Plaintiff disputes that defendants had a legitimate penological reason to prevent plaintiff from providing a clean urine sample for testing during the DSU intake process.  He justifies his failure to follow orders by explaining he helped himself to additional water because the nurses were in the room passing out medications.  He claims he needed to use the restroom a second time due to diarrhea and no officer was around to ask for permission.  Plaintiff also complains Officer Humphreys allowed him only two cups of water, when the officers always permit three cups, and that the amount of water he was provided was insufficient to produce a sample after his vomiting and having diarrhea most of the night.  Plaintiff claims other prisoners were allowed to give a urine sample up to eight hours past the deadline if they could not produce urine within the two-hour time limit.

I question whether plaintiff's punishment sufficiently implicates a liberty interest such that he may state a claim under the due process clause.  The protections of the due process clause apply only where a protected liberty interest is implicated. *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (the due process clause does not confer a liberty interest in freedom from the conditions or

Page 4 - OPINION AND ORDER DISMISSING THIRD CLAIM

degree of confinement ordinarily contemplated by a prison sentence); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 569-71 (1972) (plaintiff must allege (1) liberty or property interest protected by the Constitution; (2) deprivation of that interest by the government; and (3) lack of opportunity for process).  A liberty interest is implicated where the conditions present "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (30 days in disciplinary segregation did not invoke liberty interest); *see also Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) ("administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence"), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995).[3]

In any event, the record reflects the defendants complied with the due process protections called for by the Supreme Court.  *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974) (written notice, time to prepare, opportunity for hearing, written decision by fact-finder required).  These protections include the ability of an inmate to call witnesses and present "documentary evidence" in his defense when to do so would not be "unduly hazardous to institutional safety or correctional goals." *Id.* at 566.  When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason. *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (prison officials gave legitimate penological reason to deny inmate a requested test performed at a laboratory to confirm drug test results).  Here, plaintiff "was not given the opportunity to provide a urine sample upon entering DSU because being unable to provide, refusing to submit, or submitting an unacceptable sample is equivalent to testing positive for

---

[3]Defendants do not present facts regarding the particular restrictions imposed such that I could make a determination as to whether plaintiff suffered an atypical and significant hardship.

Page 5 - OPINION AND ORDER DISMISSING THIRD CLAIM

drug use." Humphreys Decl. ¶ 5. ODOC's refusal to give plaintiff a second chance to provide a urine sample, when he failed to follow protocol the first time, is not a violation of his due process rights. In sum, plaintiff had written notice of the charge, he had two months to investigate and prepare, he had an opportunity to present his side, and the hearings officer issued a written decision. Defendants provide a legitimate penological reason to support their denial of plaintiff's request to give a urinalysis at the time of DSU intake. Plaintiff does not present a material issue of genuine fact to the contrary.

Finally, due process requires that at least "some evidence" supports a prison disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). The hearings officer's decision met the standard. Plaintiff knew the protocol for collecting urine samples, understood he was to ask to use the restroom before doing so (as evidenced by his initial request of Officer Humphreys), and understood he was to drink only the water provided to him by Officer Humphreys. Plaintiff failed to comply with the protocol. Plaintiff fails to raise a genuine issue of material fact on this issue.

Plaintiff reiterates his need for appointment of counsel, offers to amend his claim to correct any defects, and reports the need for discovery materials. Appointment of counsel and leave to amend would be futile. Similarly, the additional discovery plaintiff contends he needs is the video recording which he says would show the actual events that took place on January 19, 2014. He explains that the video would show plaintiff was taken to DSU after he "got a small drink of water without asking" and that it was not for using the bathroom without permission. Pl.'s Decl. ¶ 21. Further discovery would be futile for the reasons set forth above.

## CONCLUSION

Based on the foregoing, defendants' Motion for Partial Summary Judgment [32] is granted.  Plaintiff's third claim is dismissed with prejudice.

IT IS SO ORDERED.

DATED this ___3rd___ day of June, 2016.


                                           /s/ Garr M. King
                                          Garr M. King
                                          United States District Judge